```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
COURTNEY DUNKLEY,                        :
                                         :    OPINION AND ORDER
                    Plaintiff,           :
              -v-                        :    09 Civ. 4064 (DLC)
                                         :
FOODMART INTERNATIONAL II, CORP. and     :
LEWIS WU,                                :
                                         :
                    Defendants.          :
----------------------------------------X
```

APPEARANCES:

For Plaintiff:
David Stein
Michael Samuel
38 West 32nd Street, Suite 1110
New York, NY 10001
    -and-
Bradley Ian Berger
Berger Attorney P.C.
321 Broadway
New York, NY 10007

For Defendants:
Hugh H. Mo
Franklin K. Chiu
The Law Firm of Hugh H. Mo., P.C.
225 Broadway, Suite 2702
New York, NY 10007

DENISE COTE, District Judge:

    Plaintiff Courtney Dunkley ("Dunkley") brings the above-captioned action against defendants Foodmart International II, Corp. ("Foodmart") and Lewis Wu (collectively "the defendants"), alleging violations of various provisions of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, et seq., New York Labor Law ("NYLL"), and New York common law. Plaintiff has

moved pursuant to Rule 56, Fed. R. Civ. P., for partial summary judgment on his claims for unpaid overtime under the FLSA and NYLL and for "spread of hours" compensation under NYLL. For the following reasons, the motion is denied.

BACKGROUND

The following facts are undisputed, or, where disputed are taken in the light most favorable to the defendants. Foodmart operates a supermarket in Spring Valley, New York. From 2001 through January 12, 2009, Foodmart employed Dunkley as "receiving personnel." In this capacity, Dunkley was responsible for checking and counting all merchandise shipped to Foodmart, moving the merchandise on to the sales floor, and keeping the receiving warehouse clean. Dunkley did not have any employees reporting to him nor did he have discretion to make significant business decisions.

From 2001 through October 18, 2008, Dunkley was scheduled to work six days a week, for twelve hours each day or a total of seventy-two hours per week. Beginning on October 20, 2008, and continuing through the end of his employment, Dunkley's hours were reduced by one-day a week, leaving him with only a sixty hour work week. Each day, Dunkley was given a one-hour, uncompensated lunch break during which he was not required to do any work.

Foodmart used a time clock to track its employees' hours, and Dunkley was required to "punch in and punch out" each day.[1] Foodmart pays its employees once every two weeks. Since Dunkley often arrived after 8 a.m. or left prior to 8 p.m., he regularly worked less than twelve-hours per day. Additionally, Dunkley did not "punch in and out" for his lunch break. Thus, during the period in which Dunkley was working six days a week, he generally clocked around 144 hours per pay period -- of which 132 should have been compensated. During the period when Dunkley was only working five days a week, he clocked approximately 120 hours per pay cycle -- of which a total of 110 hours should have been compensated.

Foodmart agreed to pay Dunkley $8 for each regular hour and $12 for each overtime hour that exceeded forty hours per week. Foodmart also agreed to pay Dunkley an additional overtime hour ($12) for each day he was expected to work more than ten hours as "spread of hours pay."

The number of hours Dunkley actually worked fluctuated based on what time he arrived and left on any given day. With few exceptions, however, Dunkley received the same paycheck for each period. Between January 1 and September 9, 2006, Dunkley

---

[1] Foodmart used a Time Systems International Hand Punch, Model # Tsi-H-102, which utilizes a computerized hand recognition system. Foodmart's manager maintained the timekeeping/payroll records.

was paid a total of $1,399.98 per period.[2]  From September 10, 2006 through October 4, 2008, Dunkley was regularly paid a total of $1,408.00 each pay period.[3]  After his hours were reduced in October 2008, Foodmart paid Dunkley $1,120 per period.

---

[2] Dunkley's paystubs from this eight month period indicate that he was paid $7.25 for each regular hour and $10.88 per overtime hour.  Dunkley was paid, however, for 155.4 hours per two-week pay period, even though he generally clocked approximately 142 hours per pay cycle and therefore worked only 130 hours (deducting an hour each day for an uncompensated lunch break).  If Dunkley was being paid at the rate of $8 per regular hour, $12 per overtime hour, and $12 per day for spread of hours pay, each biweekly period he was entitled to $1384 (Regular: $8 x 80 = $640; Overtime: $12 x 50 = $600; Spread of Hours: $12 x 12 = $144; Total Pay: $640 + $600 + $144 = $1,384).  Thus, while Dunkley's paystubs from this period suggest that he was being paid an hourly wage below the agreed-upon rate, it appears that he was actually receiving approximately $15 more than he was entitled to receive each week assuming he was being paid based on the rate of $8 per regular hour.

   Between May 21 and June 3, 2006, plaintiff was paid $1,050.30.  The plaintiff's time sheets from that period indicate that Dunkley only worked approximately 109 hours in that pay cycle.

[3] On three occasions, Dunkley was paid less than $1,408.00.  For the periods between March 9 and March 22, and between May 4 and May 17, 2008, Dunkley was only paid $1,264.  Although the time sheets for this period indicate that Dunkley worked approximately 137 hours, on March 12 and on May 5, it appears that Dunkley forgot to punch out at the end of the day and, instead, punched out when he returned to work the following morning.  Thus, on the time sheets for this period, on a line marked "manager" the numbers "72" and "60" appear, suggesting that when correcting for the punching error, plaintiff worked 132 hours or 80 hours of regular time and 52 hours of overtime.  Plaintiff's pay stubs from this period correspond with these figures.  Finally, for the period between August 24 and September 6, 2008, Dunkley was only paid $824.  On Dunkley's time sheet, an unidentified person has written the phrase "vacation 2008," and the numbers "60" and "33" appear on the

Dunkley's payroll records generally reflect that he was paid an amount that corresponds to the agreed upon rate of pay. When Dunkley worked a six day schedule, he was entitled to be paid for approximately 132 hours of work (144 hours - 12 hours in lunch breaks = 132 hours).  If Dunkley was paid $8 per regular hour, $12 per overtime hour, and $12 per day in spread of hours pay, he was entitled to receive exactly $1,408 for each two-week pay period (Regular: $8 x 80 = $640; Overtime: $12 x 12 = $624; and, Spread of Hours: $12 x 12 = $144; Total $640 + $624 + $144 = $1,408).  Similarly, when Dunkley's schedule was reduced to five days a week, he was entitled to be paid for approximately 110 hours of work (120 hours - 10 hours in lunch breaks = 110 hours), and should have received a biweekly paycheck of $1,120 if he was being compensated at the agreed upon rate (Regular: $8 X 80 = 640; Overtime: $ 12 x 30 = $360; Spread of Hours: $12 x $10 = $120; Total: $1,120).

On April 24, 2009, plaintiff filed the above-captioned action.  The case was assigned to the Honorable Stephen C. Robinson.  Discovery was scheduled to close on July 15, 2010. On November 15, 2010, the case was reassigned to this Court.  On December 22, a pretrial conference was held pursuant to Rule 16,

---

line marked "manager."  Dunkley's pay stub reflects that he was compensated for 93 hours -- 73 hours of regular time and 20 hours of overtime.

Fed. R. Civ. P.  At the conference, the parties set January 6, 2011 as the deadline by which defendants would serve plaintiff with responses to interrogatories and document demands.  On February 25, Dunkley filed a motion for partial summary judgment.  The motion became fully submitted March 18, 2011.

DISCUSSION

Plaintiff moves for summary judgment on his overtime claims under federal and state law, and his spread of hours claims pursuant to state law.  Dunkley principally contends that although he was an hourly employee, he was paid a fixed salary that did not reflect the actual hours he worked and therefore, he was denied overtime and spread of hours pay.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 225, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

I. Overtime Claims

Both federal and state law provide that when an employee works for more than forty hours a week, "such employee must receive compensation for his employment in excess of the hours

above specified at a rate not less than one and <u>one-half times the regular rate</u> at which he was employed." 28 U.S.C. § 207(a)(1) (emphasis supplied); <u>see also</u> 12 N.Y.C.R.R. § 142-2.2. Dunkley concedes that his regular rate of pay was $8 per hour and his overtime rate was $12 per hour; and, beginning on September 10, 2006, plaintiff's paystubs reflect that he was paid at this agreed upon rate. Moreover, as described <u>supra</u>, assuming Dunkley was paid at the agreed upon rate, the amount he received correlates with the number of hours he worked.[4] Thus, plaintiff's motion for summary judgment on his federal and state overtime compensation claims is denied.

Dunkley alleges that since he was paid almost the same amount each pay period, his "regular" rate of pay -- from which overtime compensation is calculated -- should be derived by dividing his total "weekly compensation by the hours worked."[5]

---

[4] Admittedly, Dunkley's paychecks did not always perfectly correspond to the number of hours he worked. But more often than not, to the extent that the two diverged, it appears to have benefitted the plaintiff. For instance, during the period when plaintiff's paystubs indicated that he was working 155 hours per period, Dunkley often received a windfall of approximately $15. Similarly, when defendants' failed to dock plaintiff's pay for arriving to work late or leaving early, plaintiff was paid for more hours than he actually worked.

[5] Courts have employed this technique for calculating the base rate of pay in cases that are readily distinguishable. For instance, in <u>Cuzco v. Orion Builders</u>, 262 F.R.D. 325, 330 (S.D.N.Y. 2009), defendant employers argued that their employees were paid a single hourly rate of $8.50 per hour, but that rate "was intended to include a built-in overtime component." Judge

8

Having identified this base level, Dunkley asserts that overtime should then be calculated as one and a half times the regular rate.  Under this analysis, Dunkley contends that his base rate of pay was actually $9.77 per hour ($1408/144 = $9.77) and therefore, his overtime rate should have been $14.65 per hour. Applying these figures, Dunkley would be entitled to approximately $1,719 per two-week pay period instead of the $1,408 that he received.  This argument fails, however, as it is undermined by the undisputed evidence that Dunkley's regular rate of pay was $8 per hour.  Indeed, Dunkley's own complaint in this action asserts that his regular rate of pay was $8 per hour.

II. Spread of Hours Claim

The "spread of hours" provision in the New York Department of Labor regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the spread of hours exceeds ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4.  Plaintiff contends that he worked more than ten hours "virtually every day of his employment" and that he was not

---

Wood rejected this argument and found that $8.50 per hour constituted the regular rate from which the overtime rate should be calculated.  Id.  Defendants in this action, however, have always paid the plaintiff two different rates, depending on the type of hour worked (regular or overtime) and Dunkley's pay stubs have always reflected this distinction.

"paid an extra hour's pay at the minimum wage for any of these days."  Defendants do not dispute that Dunkley was entitled to receive spread of hours pay, but they assert that Dunkley received this pay at the overtime rate of $12 per hour.  For instance, defendants contend that when Dunkley had a six-day schedule, he was paid for 72 hours, even though he received a one-hour uncompensated lunch break each day, and therefore only worked 66 hours.  Defendants argue that the additional six hours for which Dunkley was paid overtime constituted spread of hours pay.[6]  Thus, whether Dunkley can prevail on his spread of hours claim hinges on whether he was given a one-hour uncompensated lunch break.  Since this fact is in dispute, plaintiff's motion for summary judgment on this issue is denied.[7]

---

[6] Similarly, between October 20, 2008 and January 12, 2009, when plaintiff's schedule was reduced to five days a week, he was paid for 60 hours per week, even though he only worked 55 hours, due to his daily one-hour lunch break.

[7] In his complaint, Dunkley alleges that, "although defendants purportedly provided a meal break, Mr. Dunkley was never permitted to take one."  Plaintiff has failed to provide any evidence in support of this claim.  In opposition to plaintiff's motion for summary judgment, defendants submitted the Declaration of Lewis Wu, who testified that:

> Throughout his employment at Foodmart, Plaintiff . . . was expressly afforded with a one-hour lunch break every day, which was not compensated as agreed. During the one-hour lunch break, Plaintiff was not required to do any work or be present at Foodmart for any reason.

CONCLUSION

The plaintiff's February 25, 2011 motion for partial summary judgment is denied. A scheduling order shall control subsequent pre-trial proceedings in this case.

SO ORDERED:

Dated:   New York, New York
         August 1, 2011

                              _____
                                       DENISE COTE
                              United States District Judge